JUL 25 2025 AM 11:32
FILED - USDC - FLMD - TPA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Case No. 8:25-CV-1956-SDM-LSG

NIGEL LUCOMBE,

     Plaintiff,

v.

MICHEL GABLES, JOSEPH CATELLO AND
RANGE PROPERTY GROUP L.L.C.

           **COMPLAINT**
           **JURY TRIAL**

Defendants,

_____/


1.  Plaintiff, NIGEL LUCOMBE (**"Plaintiff"),** files this Complaint under the Telephone

Consumer Protection Act ("TCPA") 47 U.S.C. § 227, and The Florida Telephone Solicitation

Sales Act (FLA.STAT. § 501.059) (FTSA) its regulations, against Defendants RANGE

PROPERTY GROUP L.L.C. JOSEPH CATELLO AND MICHEL GABLES collectively

("**Defendants**"), and alleges based on personal knowledge and information and belief, placed

illegal unauthorized telemarketing phone calls and texts to him in violation of the (TCPA) and

(FTSA).

## <u>NATURE OF THIS ACTION</u>

2.  As part of marketing their services, Defendants hired and authorized agents to place

illegal unauthorized phone calls to Plaintiff's cellular telephone and routinely violates 47 U.S.C.

§ 227(c)(5) and 47 C.F.R. § 64.1200(a)(2) by delivering more than one advertisement or

marketing texts message and phone calls to residential or cellular telephone numbers registered

with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or

permission required by the TCPA.

1



3.      Additionally, upon information and good faith belief, Defendants routinely violates

47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one advertisement

 Telemarketing message to residential telephone numbers while failing to identify the name of

the individual caller, the name of the person or entity on whose behalf the call is being made, and

a telephone number or address at which the person or entity may be contacted.

4.      Plaintiff never consented to receive any of these phone calls, which were placed to him

for telemarketing purposes. The purpose of the TCPA and related laws is to prevent companies

from shifting their marketing costs to telephone subscribers by forcing them to accept unwanted

and unsolicited advertising. See, e.g., Krakauer v. Dish Network, 925 F.3d 643, 663 (4th Cir.

2019) ("The TCPA was enacted to solve a problem. Simply put, people felt almost helpless in

the face of repeated and unwanted telemarketing calls").

## PARTIES

5.      Plaintiff is, and at all times relevant hereto an individual and a "person" as defined by 47

U.S.C. §153 (39), a citizen and resident of Tampa, Florida, and the subscriber and user of the

cellular telephone number (813)***-7705.

6.      Defendant **RANGE PROPERTY GROUP L.L.C**. is, and at all times relevant hereto, a

limited liability for-profit organization organized under the laws Florida and "person" as defined

by 47 U.S.C. §153(39). Defendant's primary place of business is in Cape Coral, Florida.

**MICHEL GABLES** is a resident of Florida, and manager of RANGE PROPERTY GROUP

L.L.C. and can be served at 1222 SE 47th St Suite 202 Cape Coral, FL 339047. Defendants name in

this Complaint includes all agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of

Defendants. Defendant RANGE PROPERTY GROUP L.L.C. and **MICHEL GABLES** are

2

hereinafter referred to collectively as ("Defendants") Whenever in this complaint it is alleged

that Defendants committed any act or omission, it is meant that the DEFENDANTS affiliates,

subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees

committed such act or omission and that at the time such act or omission was committed, it was

done with the full authorization, ratification or approval of Defendants or was done in the routine

normal course and scope of employment of Defendants affiliates,  subsidiaries, officers,

directors, vice-principals, agents, sub-agents, servants, or employees.

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction over this action

pursuant to 28 U.S.C. § 1331, and under 47.U.S.C. 227 (c) (5) as the action arises under the

TCPA which is a federal statute.

9.     The Court has personal jurisdiction over Defendant and venue is proper in

this District because Defendants directs, markets, and provides its business activities to

this District, and because Defendant's unauthorized marketing scheme was directed by

Defendants to consumers in this District. Additionally, Defendants telephone number has

an area code that specifically coincides with locations in Florida and were received by Plaintiff

in this judicial district.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991. 47 U.S.C. 227

10.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing

equipment that could target millions of consumers *en ma*sse. Congress found that these calls

were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in

1991 U.S.C.C.A.N. 1968, 1969-71.

11.    The TCPA makes it unlawful "to make any calls (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service."47 U.S.C. § 227(b)(1)(A)(iii).

12.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order "of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

13.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

14.    Separately, the TCPA bans making telemarketing calls without a do-not-call policy Available upon demand.47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

15.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

16.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

17.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *Inre Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115¶ 165 (2003).

18.    The FCC requires "prior express written consent "for all autodialed or prerecorded Telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's

Written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1)received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any goods or service.

19.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act* of 1991, 27 FCC Red. 1830, 1844¶33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 FCC Rcd. 12391, 12397¶ 13 (1995).

20.     The FCC confirmed this principle in 2013, when it explained that "a seller ...may beheld Vicariously liable under federal common law principles of agency for violations of either section 227(b) or section227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Red. 6574, 6574 ¶1 (2013).

21.     Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663 (2016).

22.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson FiveStar Catering, Inc. v. Beason, Case No.* 10-10010,2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8,2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787F. Supp. 2d 408, 415 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## **FACTUAL ALLEGATIONS**

23.    Plaintiff successfully registered his personal cellular phone number (813) XXX-7705 on the National Do-Not-Call- Registry since November 12, 2019, which was more than 31 days prior to receiving the alleged calls.

24.    Plaintiff never asked the National Do-Not-call Registry administrator to remove him from the National-Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry (DNC) at all times relevant to this Complaint.

25.    Plaintiff registered his cellular phone number on the Do-Not-Call Registry to obtain solitude from invasive and harassing telemarketing calls. The calls prevented Plaintiff from using his cellular telephone for legitimate purposes.

26.    Plaintiff uses his cellular telephone primarily for personal, family, and household communications, and not for business purposes.

27.    Plaintiff also alleges that Defendants may have made other telephone calls prior to the calls identified below, which will be identified further in discovery.

28.    Plaintiff is the account holder and customary user of his cellular phone number.

29.    Plaintiff alleges the Defendants train their affiliates to avoid divulging too much information to leads and customers to evade the TCPA liability.

30.    Plaintiff did not have a prior business relationship with Defendants.

31.    Defendants did not have consent to call Plaintiff.

32.    Defendants are not an organization exempt from the TCPA.

6

33.    Defendants calls to Plaintiff were made for the purpose or intention of being an "unsolicited advertisement."

34.    Defendant **MICHEL GABLES** is manager of RANGE PROPERTY GROUP L.L.C.

35.    Plaintiff is the sole user of the 7705 Number and is financially responsible for phone service to the 7705 Number, including the cellular costs and data usage incurred as a result of the unlawful calls made to Plaintiff by Defendant.

36.    Defendant **MICHEL GABLES** brokers real estate transactions between property owners (typically owners of property that is distressed or in need of renovations) and prospective investors.

37.    To identify prospective sellers, Defendants tracks real property transactions and realty websites. Defendants maintains information about prospective sellers in databases that subject to its direction and control.

38.    Defendant's provide the necessary services associated with a real estate transaction, and the seller effectively pays for those services through Defendant's payment of a discounted purchase price of the sale transaction. To sell property, one or both parties to the sale must pay certain transaction cost, Defendant's home buyer service pays those cost out of the funds that would otherwise be paid to the seller. The effective fee is an actual fee. Home owner would pay that fee whether he made the payment directly or indirectly, by discounting the sale price. This makes the allegation sufficient state a claim for violations of the TCPA.

39.    Instead of homeowners paying money to contractors, painters and/or plumbers, homeowners pay an effective fee to Defendant by selling homes "as-is" at a discount. Defendant uses one or more telephone numbers that are closely related to or affiliated with telephone numbers used or maintained by Defendant in and around its headquarters in Florida.

7

40. Defendants promotes and markets its services by calling wireless phone users on listed on the Do Not Call Registry in violation of the TPCA.

41. Defendants violated the TCPA by transmitting telephone solicitation calls to Florida residents who are registered with the Federal Do Not Call Registry.

42. Upon information and belief, Defendants seeks to supplant the role of a traditional real estate agent while providing the same services as a real estate agent, and in exchange for doing so, is compensated by obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

43. In other words, consumers such as Plaintiff would pay an effective fee to Defendants for its numerous ancillary services through Defendant's payment of a reduced purchase price to those consumers.

44. As a result, Defendants would be (and, upon belief and information, is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

45. Additionally, upon information and belief, Defendants seeks to connect third party investors or homebuyers with discounted home buying opportunities through the consumers it contacts, and sells that information to those third party Investors through reassignment contracts.

46. As a result, Defendants either (1) solicited Plaintiff to sell his home at a discount in order for Defendants to resell Plaintiff's home at a profit, or (2) solicited Plaintiff to submit his information to Defendant's lead generation service and use Defendant's real estate-related services, which Defendants would then sell to

8

other businesses for a profit.

47.    Defendants sent, or caused to be sent, at least two advertisement or telemarketing text messages or telephone calls to Plaintiff's cellular telephone within a one-year period.

48. Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's residential cellular data, phone storage, and battery life, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted calls, forcing Plaintiff to divert attention away from Plaintiff's work and other activities. Not only did the receipt of the illegal solicitation calls distract Plaintiff away from Plaintiff's personal activities, Plaintiff was forced to spend time investigating the source of the calls and who sent them to him. See Muransky v. Godiva Chocolatier, Inc., 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury... is enough for standing purposes")

49.    Plaintiff did not give Defendants prior express consent or prior express written consent to send text messages or call his cellular telephone number.

50.    Defendants sent the text messages at issue for non-emergency purposes.

51.    Defendant is in the business of offering its home buying services to homeowners, on behalf of real estate investors and brokers

52.    The content of the calls made to Plaintiff show that they were for the purpose of marketing, advertising, and promoting Defendant's business and services to Plaintiff as part of an overall telemarketing strategy.

53.    The purpose of the text messages or call at issue was to advertise and to market Defendant's house buying services. The unsolicited calls by Defendants, or its agents, violated 47 U.S.C. § 227(c).

54.   Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages or call to his cellular telephone number.

55.   Plaintiff suffered actual harm as a result of the text messages and calls at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

56.   Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

57.   Upon information and good faith belief, Defendants disregards consumer's status on the DNC Registry as a matter of practice, and additionally fails to even attempt to obtain prior express written consent to contact Plaintiff or other consumers regarding its telemarketing offerings, based on numerous complaints made by other consumers.

58.   Plaintiff brings this action individually, to seek redress for Defendants wrongful conduct.

59.   Plaintiff is among those who received unsolicited Telephone calls from Defendants in violation of the TCPA caller ID laws 47C.F.R. § 64.1200(d)(4).

60.   Defendants failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do- Not Call provision in 47 C.F.R. § 64.1200(c).

61.   Defendants did not place the calls to Plaintiff for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

62.   Each of the above unsolicited telephonic communications by Defendant violated 47 U.S.C. § 227(c).

63.   On January 11, 2025, Plaintiff received one of multiple texts to his personal cellular phone (7705 Number) from Defendant's caller ID number 813-544-3162 pitching home buying service.

64.    Defendant's asked qualifying questions about Plaintiff's house reading from a script provided by Defendant.

65.    The onslaught of telemarketing telephone texts and calls continued on February 25, 2025 Defendant transmitted a text from number 813-544-3162 to Plaintiff's cellular number (7705):



66.    On April 15, 2025, Defendant transmitted text  Plaintiff's Cellular telephone number (7705) and in doing so, transmitted to the Plaintiff's caller identification a number (813-544-3162).

67.    May 5, 2025, Defendant transmitted two Sales Calls to Plaintiff's cellular telephone number (7705) and, in doing so, transmitted to the Plaintiff's caller identification service (813-544-3162).

68.    Defendant called and text Plaintiff on May 30, 2025 and with Caller ID 813-544-3162. Defendant identified himself as "Joseph" and pitched house buying service e.g:



69.  Nonetheless, August 20, 2024 and September 20, 2024, Defendant's text on behalf of

RANGE PROPERTY GROUP L.L.C. and from telephone number (7705). The caller

identification number displayed was 813-796-6853. The SMS text message read:



12

70.    June 23, 2024, Defendant transmitted a call from 813-544-3162 number to Plaintiff's cellular telephone.  Defendants text & telephone calls constitute telemarketing as defined by 47 C.F.R. § 64.1200(f)(12) because at least one purpose  of the calls was to pitch a house buying service.

71.    At all times relevant, Plaintiff was a citizen of the State of Florida. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

72.     Defendant is, and at all times mentioned herein was, a company and a "person," as defined by 47 U.S.C. § 153(39).

73.    Plaintiff is the sole user and/or subscriber of his Cell Phone.

74.    Plaintiff Cell Phone has been registered to the Nation Do Not Call Registry since November 12, 2019. Upon information and belief, this number belongs to Defendant and/or Defendant's agent.

75.    Plaintiff did not provide Defendants with his cellular telephone number at any time, nor did Plaintiff give permission for Defendants to call his cell phone.

76.    Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendants. Plaintiff had no interest in selling his house.

77.    Plaintiff did not have a personal relationship with Defendant at any point in time.

78.    Plaintiff did not give Defendants prior express invitation or consent in writing for Defendants to call Plaintiff's cellular telephone for marketing or solicitation purposes.

79.    At all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations

prescribed under 47 U.S.C. § 227(c)(5), including the Do- Not Call provision in 47 C.F.R. § 64.1200(c).

80.    Defendants did not place the calls to Plaintiff for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

81.    Each of the above unsolicited telephonic communications by Defendants and/or its agents violated 47 U.S.C. § 227(b)(1).

82.    Receiving Defendant's repeated unauthorized calls text and voice messages drained Plaintiffs' phone batteries, consumed space on Plaintiffs' cell phones, and caused Plaintiffs additional electric expenses and wear and tear on their phones and batteries.

83. The cumulative effect of unsolicited messages like Defendant's poses a real risk of ultimately rendering the phones unusable for other purposes as a result of the phones' memories being taken up.

84.    Plaintiff were personally affected because they were frustrated, distressed, disturbed, and felt harassed that Defendant and/or its agents continued to direct unsolicited and unauthorized phone calls and messages to their cell phones.

85.    Defendant's telephonic communications forced Plaintiffs to be deprived of the privacy and utility of their cell phone by forcing Plaintiffs to ignore or reject Defendant's disruptive calls, voice messages, dismiss alerts, and/or silence their cell phones as a result of Defendant's incessant unsolicited telephone calls.

86.    The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant placed the calls to Plaintiffs without their consent, Defendant failed to address or respect the limitations imposed by the TCPA. In doing so, Defendant invaded Plaintiffs' privacy and violated the spirit

and intent behind the TCPA.

87.    Defendant's violations caused Plaintiffs to suffer real and concrete harm in the form of intrusion and distraction, wasted time, wasted cellular phone battery, loss of cellular phone use, and natural and foreseeable stress and frustration in connection with the foregoing, all of which the TCPA was designed to prevent. See, e.g., Mey v. Got Warranty, Inc., No. 5:15-CV-101, 2016 U.S. Dist. LEXIS 84972, at *8 (N.D.W. Va. June 30, 2016) ("[S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.").

88.    Through the aforementioned conduct, Defendant repeatedly violated the TCPA, 47 U.S.C. §§ 227, et seq., numerous times.

89.    All of the unsolicited telephone calls by Defendant and/or its agents violated 47 U.S.C. § 227(c)(5).

90.    Defendant's unsolicited phone messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

91.    Defendant's phone messages also inconvenienced Plaintiffs and caused disruption to Plaintiffs' daily lives.

92.    Defendant's unsolicited phone messages caused Plaintiffs actual harm. Specifically, Plaintiffs estimate that they spent numerous hours investigating the unwanted phone messages including how they obtained Plaintiffs' numbers and who

the Defendant was.

93.      Through the above-alleged conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

<u>VICARIOUS LIABILITY OF DEFENDANTS</u>
<u>RANGE PROPERTY GROUP L.L.C. AND MICHEL GABLES</u>

94.      Defendants RANGE PROPERTY GROUP L.L.C and MICHEL GABLES   are vicariously liable for the telemarketing calls that generated the lead on their behalf.

95.      The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA.47U.S.C. § 227(b)(2).

96.      The FCC has explained that its "rules generally establish that the party on whose behalf a Solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397¶ 13 (1995).

97.      The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf Of 'liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party onanotherentity'sbehalfunder47 U.S.C. § 227(b)).

98.      The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,

> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies)would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

In *re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588¶37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

99.    More specifically, Dish held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer" has apparent (if not actual) authority" to make the calls. *Id.* at 6586¶34.

100.    The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587¶36 & n.107.

101.    To the contrary, the FCC armed with extensive data about robocalls and American's

Complaints about them determined that vicarious liability is essential to serve the TCPA's

Remedial purpose of protecting Americans from "unwanted telemarketing invasions. "*Id.* at 6587

¶36.

102.    Vicarious liability is important because reputable, traceable, and solvent companies that

benefit from illegal telemarketing are "in the best position to monitor and police TCPA

compliance by third-party telemarketers. "*Id.* at6588¶37.

103.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES are legally

responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply

with the TCPA when so doing.

104.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES knowingly and actively accepted business that originated through illegal telemarketing.

105.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketer to cease that conduct.

106.    By hiring a company to make calls on its behalf, Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES "manifest[ed] assent to another person. . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement")

107.    Moreover, Defendants RANGE PROPERTY GROUP L.L.C and MICHEL GABLES maintained interim control over the actions of its telemarketers.

108.    For example, Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

109.    Furthermore, Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant RANGE PROPERTY GROUP L.L.C. and the ability to require them to respect the National Do Not Call Registry.

110.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES    also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

111.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES   donned its telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched Defendants "home buying service in the abstract.

112. Apparent authority turns on whether a third party believes the principal authorized its Agent to act and the belief is "traceable" to a manifestation of the principal. Restatement§ 2.03 cmt. C.

113.    "[A]pparent authority can arise in multiple ways and does not require that 'a principal's Manifestation must be directed to a specific third party in a communication made directly to that person." Dish, 28 FCC  Rcd. at 6586 ¶34n.102 (quoting Restatement § 2.03 cmt. c).

114.    A principal may make a manifestation "by directing an agent to make statements to third Parties or directing or designating an agent to perform acts or conduct negotiations, placing an Agent in a position within an organization, or placing an agent in charge of a transaction or situation. "Restatement § 2.03 cmt. c.

115.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES   transferred customer information, including Plaintiff's contact information, directly to Defendant. Thus, the telemarketer had the "ability. . . to enter consumer information into the seller's sales or customer systems, "which The FCC has explained to show apparent agency.

116.    Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships. . . through discovery, if they are not independently privy to such information." Id. at 6592-93¶46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." Id. at6593 ¶46.

117.    Defendants RANGE PROPERTY GROUP L.L.C. and MICHEL GABLES   are the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for their home buying service on behalf of Defendants.

## DEFENDANT MICHEL GABLES  IS PERSONALLY LIABLE

118.    Defendant MICHEL GABLES refuses to take any action to stop or curtail the unlawful sales practices and illegal unauthorized phone calls because these practices benefit Defendant MICHEL GABLES financially when homeowners utilize RANGE PROPERTY GROUP L.L.C' home buying service.

119.    "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See United States v Pollution Serv. Of Oswego, Inc.,763 F.2d 133, 134-135 (2tR Cir.1985)

120.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." General Motors Acceptance Corp. v. Bates, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." Mozingo v. Correct Mfg. Corp., 752F.2d 168, 174 (5th Cirt. 1985) (Citing Escude Cruz v. Ortho Pharmaceutical Corp., 619F.2d 902, 907(1st Cir.1980))(Citing Texas v. American Blastfax, Inc., 164 F. Supp. 2d892 (W.D. Tex. 2001)

121.    Quoting Texas v. American Blastfax:

The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Home were the "guiding spirits"an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000,Greg and Michael Home had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Home are jointly and  severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164F. Supp. 2d892 (W.D. Tex. 2001)

122.    The Same Court held that corporate officers were also personally liable for TCPA Violations:

The State contends Greg and Michael Home are personally liable for any TCPA Damages because they were solely responsible for the violating conduct.....For the Same reasons discussed in finding the individual defendants personally liable under The TCPA, the Court agrees. See, e.g., Barclay v. Johnson, 686S.W.2d 334,336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985,no writ) (finding personal liability for Corporate officer in DTPA misrepresentation claim, based on general rule that "a Corporate agent knowingly participating in a tortious of fraudulent act may beheld Individually liable, even though he performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax,Inc., Greg Home and Michael Home are jointly and severally liable for $6,000 in damages For their violations of the TCPA." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892(W.D. Tex. 2001

123.    At all times material to the Complaint, acting alone or in concert with others,

Defendant MICHEL GABLES   has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant including the acts or practices set forth in this Complaint.

124.    Defendant MICHEL GABLES is the principal director and operator of Defendant controls the day-to-day operations of Defendant and directed their representatives, employees, agents, sales persons, and telemarketers to make TCPA violating phone calls to solicit their "home buying" service.

125.    Defendant MICHEL GABLES knowingly and willfully ignores the law. These violations are the Direct result of the instructions Defendant MICHEL GABLES has given to their telemarketers, representatives, agents, employees, solicitors, salespersons, and others that carryout his schemes.

126.    Defendant MICHEL GABLES approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefits.

127.    Defendant MICHEL GABLES   is not merely a bystander and is the mastermind that scheme, Planned, directed, initiated, and controlled the illegal and fraudulent behavior.

128.    Defendant MICHEL GABLES is well aware their conduct violated the TCPA and refused to alter their behavior. Defendant MICHEL GABLES is the sole director of Defendant and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Defendant MICHEL GABLES has taken no steps to stop the behavior because the behavior benefits Defendants financially. Defendant MICHEL GABLES   breaks the law with his eyes and pocketbooks wide open.

129.    Defendant MICHEL GABLES should be held jointly and severally liable for the TCPA violations because he actually committed the conduct that violated The TCPA and /or he actively oversaw and directed this conduct.

130.    Defendant MICHEL GABLES should be held liable because to do otherwise would simply allow him to dissolve Defendant's L.L.C. and set up a new corporation and repeat his conduct. This would result in TCPA being unenforceable.

## THE PLAINFF'S CELL PHONE IS A RESIDENTIALNUMBER

131. The calls were to the Plaintiff's cellular phone (XXX) XXX-7705, which is the Plaintiff's personal cellular phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cellphone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

132.    Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

133.    Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

134.    Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

135.    Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phones.

## FIRST CAUSE OF ACTION

### Violation of The Florida Telephone Solicitation Sales Act (FLA.STAT. § 501.059)

136.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

137.    The FTSA's implementing regulations no telephone solicitor shall make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device without prior express written consent (FTSA) FLA.STAT. §501-059 (1) (g) .

138.    Defendant violated this provision by failing to identify itself as the Defendants in their telephone calls.

139.    By placing at least two telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, Defendant, violated FLA.STAT. §501-059.

140.    Defendants' first violation of the (FTSA) implementing regulations by calling  a number on the national Do-Not-Call registry.

141.    Defendant second violation of the (FTSA) implementing regulations is failing to properly identify them.

142. The foregoing acts and omissions of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least six (6) violations of the (FTSA), §501-059 (1) (2), inter alia, failing to comply with the Do-Not-Call Registry and failing to properly identify themselves, during each call.

24

143.   As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the (FTSA), §501-059 (l) (2), Plaintiff is entitled to an award of $500 in damages for each call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at (FLA.STAT. § 501.059)(10)(a)(1)

144.   Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the (FTSA),, §501-059 (1) (2)by making calls in violation of any of the (FTSA),'s implementing regulations in the future.

145.   The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $1500 per violation award, as provided in (FLA.STAT. § 501.059)(10)(b)).

146.   Plaintiff's telephone number has been registered on the Federal Do Not Call Registry since at least 30 days prior to the calls described above.

## SECOND CAUSE OF ACTION

### Telemarketing Without Mandated Safeguards,47 C.F.R.§ 64.1200(d)
### (Against All Defendants)

147.   Plaintiff incorporates the forgoing allegations as if fully set forth herein.

148.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute telemarketers multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of47 C.F.R. § 64.1200(d)(1)2;

b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, inviolationof47 C.F.R. § 64.1200(d)(2)3; and,

c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).

149.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B) and is entitled to an award of up to $1,500 in damages for each such knowing or Willful violation. 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION

### Defendants Violated 47 U.S.C. § 227(c)(5) of the TCPA (DNC)

150.    Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

151.    The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

152.    Defendants contacted the Plaintiff despite the fact that his number has been on the Do Not Call Registry since as early as November 12, 2019.

153.    The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." See 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

154.    The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. §227(a)(4).

155.    The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." See FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R § 64.1200(a)(2).

156.    The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500.00 per violation and up to $1,500.00 per violation if the violation is determined to be willful. See 47 U.S.C. §§ 227(c)(5).

157.    In addition, the TCPA allows the Court to enjoin Defendants' violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. See 47 U.S.C. § 227(c)(5)(A).

158.    By calling the Plaintiff's cell phone after his telephone number was registered on the National Do Not Call Registry, Defendants violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and the TCPA's corresponding regulations.

159.    Defendants knew or should have known that the Plaintiff had his telephone number registered on the Do Not Call Registry.

160.    Plaintiff is entitled to damages of $500.00 per violation for each call placed and up to $1,500.00 per violation if the Court finds that Defendants willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.      An award of actual damages pursuant to 47 U.S.C. § 227(b)(3)(B) and Fla. Stat. § 559.77;

b.      An award of statutory damages of $500 for each negligent

27

violation of the TCPA and $1,500 for each willful or knowing violation

pursuant to 47 U.S.C. § 227(b)(3)(C);

c.      Additional statutory damages of $500 per violative telephone call as provided under 47

U.S.C. 227 ( C);

d.      Treble damages of $1,500 per violative telephone call as provided under 227(c):

e.      An award of actual damages pursuant to Stat. § 509.059

f.      An award of statutory damages of $500 for each negligent violation of the TCPA and

$1,500 for each willful or knowing violation pursuant to Fla. Stat. § 509.059.

g.      An award of statutory damages of $1500 for  telephone call in statutory damages arising

from the TCPA 227 (c ) intentional violations jointly and severally against Defendants text

messages and telephone calls.

h.      An award of statutory damages of $1500 for  each telephone call in statutory damages

arising from the Defendants' first violation of the (FTSA) implementing regulations by calling  a

number on the national Do-Not-Call registry.

i.      An award of statutory damages of $1500 for each  telephone call in statutory damages

arising from the Defendant second violation of the (FTSA) implementing regulations is failing to

properly identify them.

j.      An award of reasonable attorney's fees and costs; and any other relief this Court deems

just and proper.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records,

lists, electronic databases or other itemization of telephone numbers associated with Defendant

and the calls as alleged herein.

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury.

Dated: July 25, 2025                    Respectfully submitted,

Nigel Lucombe, Pro Se
P.O. Box 2589
Lutz, FL 33548
Nlucombe@Gmail.com
Tel: 813-900-7705